I would just like to say that we are fortunate to have the benefit of having with us this morning, sitting by designation, our colleague from the District Court for the District of Connecticut, Judge Harderton. We are indeed fortunate to have the benefit of her experience and her wisdom and we welcome her to the Federal Circuit. Also, for the attorneys who are here who are going to argue, these arguments are recorded and the recordings are available on the court's website and so that the public will understand who you are and who you represent. When you come to the podium, please enter an appearance, state your name and who you represent and then you can proceed. I understand in the first case, the first case is Axiom Resource v. United States, docket number 2008-5072. I understand in this case that the counsel are going to split the argument, is that correct? Yes, Your Honor. The government will begin? Yes, sir. And I'm going to leave it up to you to divide up your time appropriately, so I'm not going to watch the clock for you. I suggest you keep an eye on it yourself. And with that, we'll proceed. May it please the Court, Your Honor, William Kanellis for the United States. Good morning. This appeal, our appeal, is based on the idea that decisions about government contracting are better made by trained government professionals than by judges. This principle is reflected in the Administrative Procedure Act and is contained in decisions such as CAMP, Florida Power and Light, and IMPRESA. The Court of Federal Claims in this instance erred by disregarding the deferential posture mandated by the APA and substituting instead its own set of normative criteria for the considered judgment of the contracting agency. The Court ignored the strict admonition of the Supreme Court in CAMP, and that admonition being that the record should be comprised of the record compiled by the contracting agency or by the agency. Let me ask you about that point, because you cite at length in your briefs the excerpts where the Court of Claims judge said anything comes in and so forth. If the Court had not relied on any of the declarations in reaching her determination, there's no problem, right? Are you saying we should conclude that a Court of Claims judge or a district court judge abuses his or her discretion under CAMP simply by letting the material in, even if it is never relied on in reaching conclusion? We believe that the Court, that is correct, Your Honor. And that is because by introducing these extraneous materials, the Court, in essence, adds to the desiderata of the contracting agency, adds to those factors, and expands the review beyond the record view. The Supreme Court in CAMP was very clear about this. And there's no at least a harmless error standard at all? There would be if the Court did not rely exclusively upon those declarations. No, that was my question. In an instance where the Court lets everything in, but ultimately doesn't rely on that matter which you think was improperly let in, is there any problem? Is there any basis for challenging? In that instance, without knowing more details, I would say there would not be a problem because the error is harmless and the Court based its decision on other materials. However, the Supreme Court in CAMP was very specific about the rationale behind keeping the record, confining the record to those materials considered by the contracting agency or by the agency. Is there any point in which those declarations could have been put in? I mean, I don't know enough about the precise contracting process. But if Axiom or some other party wants to have declarations put in the record, how is that done? Is it all controlled by the contracting officer or do they get a submission to the record before the contracting officer? How does that work? It's in the Court. If there is a protest or it's in the Court of Federal Claims, there is no way to get those declarations in unless there is for some reason those declarations were relied upon by the contracting officer. Now, there would be an opportunity during the procurement process for a bidder to submit declarations as part of its bid. Could those declarations be permitted such as were used in this case that appear to be opinion evidence? In other words, the Adams and Richards declarations, would they be appropriate for the procurement officer to be considering? I think it's difficult to discern it because of the vague nature of this contract that we're dealing with. But I think that ordinarily that would depend upon the terms of the solicitation. Ordinarily, all the contracting agency must do is, using its own experience and judgment, ascertain what are the factors, what are the criteria that we need to consider in order to award this particular contract. If those declarations in this hypothetical instance were introduced as part of a bid, then perhaps the contracting agency may or may not consider those. But that's entirely within the contracting agency's discretion. Again, the mistake, the error, the principal error of the Court with respect to the APA review is its belief that it could substitute its own set of criteria for the judgment of the contracting agency. Before you get into that point, and we'll come back to it in a minute, with respect to the supplementation of the record, what is the proper standard of review? My understanding is you're suggesting that it's a de novo review on our part, but is it not an evidentiary question that should be looked at from an abuse of discretion standpoint? No, Your Honor, and although the Court in passing noted that it should be an abuse of discretion, there is no evidentiary consideration to defer to in this case because traditionally in district courts you have the record, and that is built in the district court through evidence, through papers. But in this instance, the record is not made in the district court. The record is made by the agency, and therefore the traditional deference of an abuse of discretion standard, which is employed by appellate courts, is unnecessary in this instance. There are situations, as discussed to some extent in the Esch case, there are situations where the record may be supplemented with some evidentiary question or some piece of evidence that was either overlooked or some other special circumstance, rare circumstance. Well, we believe that Esch is overbroad and it cannot be reconciled. It may be, but my point is that I think it's difficult to say that there are no exceptions ever to a court reviewing the record and supplementing the record with respect to certain materials. Absolutely, Your Honor. Then the question is on what basis is that determination made? Abuse of discretion or is that a plenary review? We believe it should be plenary, Your Honor. And again, because it would be anathema for the Court to review without deference the decision of the lower court as to whether the record is rationally related to the conclusion of the agency, and yet defer to the Court for some reason on what constitutes that record. And so because of the abuse of discretion standards traditionally employed, because of the discrete decisions of a trial court in the process of a trial, and because those sort of decisions are not extant in Administrative Procedure Act cases, that deference is not necessary. But to go to your earlier question, Your Honor, about the circumstances under which a record may be supplemented, we certainly agree with this court in Impreza, which quoted Florida Power and Light, which stated that a record may be supplemented in those rare circumstances where the rationale of the contracting agency is not evident from the face of the record. But that doesn't mean, and that doesn't allow or permit the court to do what it did in this case, which is to supplement the record not with the rationale of the contracting agency, but with the rationale of individuals hired by the protester who had no involvement in the procurement and who had acknowledged they had no idea about how the contract was to be administered. In that instance, the court exhibited no self-control. It went far beyond the ambit of APA review because these after-the-fact declarations had nothing to do with the rationale of the contracting agency. So what do you want us to do here? It seems to me if we agree with you, we just get as far as the supplementation question, then you're looking at a remand and a do-over, whereas on other issues, arguably, we could go further and just dispose of the matter here. So what are you asking us to do? We would ask that the court address the OCI issue. And the reason is because there, as currently stands, there exists a dichotomy in the law of OCI and the Court of Federal Claims. There is what Judge Brayden decided, and there is what every other Court of Federal Claims and GAO decision has decided. The traditional approach, and this is reflected in decisions such as ARINC, is that an unequal access to information OCI is based upon information derived from a prior contract that is used to obtain an unfair competitive advantage on the extant protested contract. Now, Judge Brayden turned everything downside up. She stated that an OCI, an unequal access to information OCI, would exist in the instance where information that is obtained on the protested contract and the existing contract is to be assessed as to whether or not that it could be used in future unrealized hypothetical contracts. Okay, in reaching that, let's assume we want to go there. What standard of review do we then apply? It should be deniable, Your Honor. This is a question of law. The Court's misinterpretation of FAR Part 9.5 is an error of law, and it's an error of law for two reasons.  requires that a contracting officer speculate as to future potential conflicts for unrealized contracts. The problem with that is when a contracting agency sits down to make that determination, they are left to speculate as to, well, how could this information possibly down the road be used that would manifest in an organizational conflict? I'm a little confused. I thought in your briefs you were arguing for an APA arbitrary and capricious review of what the contracting officer did and not a de novo review. That is correct, Your Honor, but I was responding to the Court's question with respect to the error of the reviewing the error of the Court with respect to the OCI issue. And that error is You're saying we should take a de novo review of the Court of Federal Claims application of the APA standard that is abuse of discretion or arbitrary capricious, I'm sorry. Yes, sir. But ultimately, in order to dispose of the case, what review do we use so that of the record by the contracting officer? You would use de novo review with respect to all aspects of this case because the Court's error with respect to its interpretation of the OCI issue is an error of law. But if the error that you are principally pointing at, which is the inappropriate supplementation of the administrative record, why shouldn't this Court consider without the supplementation, whether using an arbitrary and capricious standard, whether the contracting officer had a rational basis for the award of the contract? This Court may indeed do that, Your Honor. The Court took the same approach in Impreza. Right. And so that issue, this Court certainly can engage in that sort of review. And so you don't, in that way, get into the issue of what is the scope and nature of the FARAD issue. But we would ask this Court to address that because of this dichotomy that exists currently. These two approaches, Judge Braden's approach and the traditional approach, are irreconcilable. And so whichever approach a contracting agency used, there would be a basis to protest by relying upon the alternative approach. Does that dichotomy exist if there is, in fact, if the judgment is vacated? If the judgment of the Court below is vacated, then no, Your Honor. But it would help, we believe, for the Court to opine on the OCI issue because we think that the courts, the other courts that have addressed this other than Judge Braden, have developed an approach that is sound, that allows contracting agencies to issue contract awards under a clear standard. Your Honor, I see that I've gone well into- We'll hear from your co-counsel for three minutes and then we'll restore your three minutes of review. Thank you, sir. Good morning. Thank you for the extra time. I'm Marcia Madsen with the firm of Mayor Brown and we're representing Lockheed Martin Federal Health Care in this appeal. May it please the Court, you've got our briefs, you've heard from the government, and there's really just one point on the merits that I would like to make regarding the standard of review. And it's regarding the Court of Federal Claims' conclusion that the Army's contracting officer, who I may probably refer to as the CO here, violated the OCI regulation, the applicable regulation in the FAR, in awarding this contract and not borrowing Lockheed Martin Federal Health Care from future non-purchased care contracts. The Court of Federal Claims concluded that it did not need to address whether the contracting officer's decision was arbitrary and capricious because the Court of Federal Claims said that there was a violation of the law. However, we believe that the Court below failed to apply actually the correct APA standard of review because it applied the violation of law prong of 5 U.S.C. 706A2. And this is because, and I think this is getting to one of the questions you asked, counsel, for the government, the Court of Federal Claims failed to properly examine the regulation that's at issue here, FAR 9.5. As we showed in our briefs, I believe the regulatory structure of FAR 9.5 commits to the contracting officer the determination of whether an actual or potential organizational conflict of interest exists and the approach to addressing it. The regulation requires that the contracting officer perform an analysis to identify and assess OCIs and to determine how they should be addressed. FAR 9.505 emphasizes that a transaction-by-transaction, fact-intensive inquiry by the CO must be made and it emphasizes that the CO should apply common sense, good judgment and sound discretion in determining whether an OCI exists and if so, what to do about it. All of which suggests that there's some disagreement perhaps you have with the government because the government views kind of that determination to be a legal issue upon which we ought to opine. And what you're saying suggests that the CO does whatever he and she, you know, applies the standard however he or she thinks it might and then we just, and that decision is then reviewed under an arbitrary standard. Your Honor, I don't think I disagree with the government here. My point is that when you look at the regulation itself, it is a regulation under which I think it would be very difficult to find an actual violation because it is a regulation that gives the government a very substantial amount of discretion to analyze whether there is such a conflict of interest and to determine what to do about it and it also gives, envisions a very broad range of reasonable and acceptable conduct. So we actually think that the court below, in using the violation of law prong under the APA, misanalyzed the law that the court below should have used the arbitrary and capricious standard to analyze what the contracting officer had done here. Because by expressed terms, the regulatory structure entrusts the CO with all of this discretion, there is this very large amount of room for the CO to analyze and determine whether there is an OCI and what to do about the OCI. And it's for that reason, I think, that all the prior bid protest cases that we've cited in our briefs, some of which were mentioned by government counsel, focused on whether the agency reasonably analyzed the facts. The court below acknowledged the uniformity in prior case law, but it nevertheless regarded that approach, as it stated, as inapplicable where the record contains substantial evidence that one or more FAR provisions have been violated. What's the current status of things now? What's the current status of things? Yes. The contract, under the Court of Federal Claims decision, the contract ended and the court enjoined the exercise of two future options that were priced and bid on and awarded at the time. Not awarded, but priced and bid on as part of the award. So it was a three-year contract. The base year was performed. At the end of that base year, the Court of Federal Claims enjoined the Army from awarding the two option years. Which was performed by Lockheed Martin. It was performed by Lockheed Martin. That's correct. That's correct. If, in fact, the analysis of the Court of Claims that there was a violation of law is found to have been erroneous and that the arbitrary and capricious standard should have been applied to the contracting officer's analysis of the CLI, why would the court, this court, need to address the standard or the form of analysis for a FAR 9.5 conflict of interest, CLI? I think there's two pieces to that, Your Honor. The first is, I think your question is on point, that the analysis that should have been conducted was an arbitrary and capricious analysis because there is an extensive record that is in the joint appendix here of what the contracting officer actually did to analyze the conflict of interest. And the court below ignored that record, actually in favor of those opinion declarations. So we think, obviously, the arbitrary and capricious standard should be applied. And if it were to be applied properly under the regulation, there is great deference that would be given to the contracting officer. I think the reason this court needs to weigh in on the organizational conflict of interest point is because, as Mr. Kanellis said, the opinion in the court below talks about how this analysis that the contracting officer is supposed to do should work, and it's backwards. And it's going to cause a great deal of confusion for the government and for offerors in these procurements. The operating assumption in the opinion in the court below is that all future conflicts of interest have to be precluded, despite the fact that you can't tell what they are, and that the regulation itself envisions a process where each transaction is analyzed on its facts to determine if there's a conflict, how extensive it is, and what's appropriate to do with it. So the court below went overboard, basically. Thank you very much. We'll restore the three minutes of rebuttal time, and we will give your adversary an extra three minutes, and you'll have 18 minutes. Mr. Del Sordo. Thank you, Your Honor. May it please the court, James Del Sordo for the appellee. Your Honors have addressed some of the most salient points here. I'll first go to the issue of supplementing the record. While my opponents will make it seem that Judge Brayden engaged in sort of a wild, wild west action of just letting everything possible in the universe come in without any sort of consideration, what they're pointing to is a comment in a telephone conference call. The court below did actually require us to file motions to supplement, which were done, and we had to justify the supplementation of the record based on the factors that the court considered. Did she disallow anything that you asked to be put in the record? I believe she stated that one of the declarations, Mr. Strouders, could come in, but she wasn't going to pay any attention to it. So what recognized exception to the APA standard that only the administrative record be considered was used? There is several of them, Your Honor. First of all, we addressed the court on the Esch factors that have been mentioned before, which is a case out of D.C. Circuit that talks about the standards for supplementing the agency record. Which of those factors? Yes. So in particular, one, two, and four, which number one is agency action is not adequately explained by the existing record. Number two, that the agency failed to consider relevant factors in its decision. And number four, the case is so complex that the court needs additional information for it to consider the case. And in particular, that last one, the complexity seems particularly relevant since the contracting officer himself took three trips to the well to figure out the situation. Because if you recall from the record, there was initial GAO protest in the summer of 2006. Before the agency report was submitted, the government decided it was going to take corrective action and the case was dismissed. They came back, said that they had reconsidered their decision and made a new contract award. They protested. Once again, before the agency report was submitted and before Judge Arden, the agency report is what the government is talking about. This is the compilation. This is what the contracting officer did in making their decision. So once again, at the GAO, before the agency report is submitted, they say they're going to take corrective action and the GAO dismissed the case. Then we come back to April of 2007. They've once again said, well, okay, we've gone back and re-looked at the – and in each of these instances when they're saying they're going to go and reconsider their decision, it's based solely on the organizational conflict of interest issue. It wasn't something else. So clearly the contracting officer himself realized in some fashion that he didn't do an adequate job the first several times. So clearly this is a complex issue justifying some sort of supplementation of the record. So by the time you get through all those stages and the three protests and so forth, what did the court of claims determine had been failed to be considered? This gets to the issue that was addressed with Ms. Madsen, was that the violation of a law or regulation. As we know with the APA, there's two prongs, either that the government's decision was arbitrary and capricious, that's where you get to whether it's unreasonable or not, or whether it was a violation of law or regulation. And what Judge Braden looked at, not necessarily FAR 9.505, but the language of FAR 9.504, which imposes upon the contracting officer a duty to avoid, neutralize, or mitigate significant potential conflicts of interest before contract award. I'm reading from FAR 9.504, subparagraph A, subparagraph 2. And actually in subparagraph A it says, the contracting officer shall. So this is an affirmative obligation on the contracting officer. It is further explained about how they do that sort of analysis in FAR 9.505, but what Judge Braden was pointing to is that there is an affirmative obligation for the contracting officer, not just to look at whether there's a conflict of interest in this award, which potentially you could wall off each award and find that there's no conflict within every particular award, but maybe because of the nature of the program or the nature of the work that a particular company does, that because they do work on another aspect of something, that there might be a potential for other conflicts of interest. But isn't that a verse that you suggest, one that requires an impossible set of hypotheticals? Not necessarily, Your Honor. In particular, in this situation, the government itself very wisely analyzed the nature of the work here. So in the request for quotations, the government's declaration, this is we want to buy some services, they analyzed internally their own business and said that there is essentially three categories of work. Category 1, which is purchase care. Category 2, which is support services, which is what we're dealing with here. And then Category 3, which was sort of an information technology business support to the military health care facilities, the computer systems at an Army hospital or something like that. So in particular, in this situation, they said, look, we realize that there may be a potential conflict of interest if a contractor is providing computer support to DeWitt Army Hospital, Fort Belvoir, but is also acting as some sort of support contractor to our Office of General Counsel and Procurement Office in Aurora, Colorado, which is actually the contract that's in dispute here. So the government itself recognized the potential conflict of interest, which is exactly what 9.504 says.  In fact, Lockheed Martin, who has an extensive array of information technology contracts under Category 3, supporting the government's health care system, wants to then work in the Office of the General Counsel for the TRICARE management activity and in the Procurement Office. They're going to learn all sorts of stuff, information, source selection information, plans that the agency has that may affect what happens in the health care facilities, even though the TRICARE management activity is just dealing with civilian health care. Sergeant and his wife need to go see a doctor. They're not going to an Army hospital. They're going to what's called a TRICARE facility in a suburban area. Even though that doesn't deal with military health care, those systems need to speak to one another so that if Sergeant Jones goes to the civilian doctor, the next week he goes to the Army hospital, the Army hospital needs to be able to pull up its files and those systems need to be able to talk to one another. That's the gravamen of the problem. The Category 2 contractor at OGC is going to be essentially sitting in the cockpit. But as we follow this along, a lot of it came down to the so-called adequacy of a mitigation plan, right? Right, yes. Okay, and as I understood it, with respect to the mitigation plan, do you agree that the government could appropriately enforce a mitigation plan if the mitigation plan was satisfactory? The government, it would seem to me that if a contractor says in his proposal, we're going to do X, Y, and Z, the government relies on those assertions that the contractor is going to do something and the government finds out that the contractor has failed to do that something, adhere to their mitigation plan. That would be the basis for some sort of sanction, either termination for default or other types. So you agree that the government could enforce the mitigation plan? It could, yes. It didn't even have to be, well, because the proposal becomes part of the contract. Yes, so what I'm confused about here is that as I understood what the Court of Claims did, eventually she came down to saying the only remaining problem with Lockheed's mitigation plan was that it was unenforceable. Am I wrong about that? That was the terminology she used, Your Honor. But the government was willing to enforce it, right? They put it in the contract. So, I mean, it came away unclear on what the ultimate problem was. Hopefully I'm seeing Judge Braden's intentions. Not being able to read her mind, but based on her in-court statements and what she said in her decision, it was she understood that potentially this thing could be enforced. One, she wasn't confident that the contracting officer was going to manage the program because he had failed to understand the problem up to that point that he would effectively enforce it. She was also concerned because there was a definite indication that Lockheed Martin had already violated its own mitigation plan in bidding on this contract, that it was not necessarily going to be enforceable. So she wanted to have as a condition of her decision to have someone else tell her that the plan was working. She didn't find any. Let me restate this. She found that the mitigation efforts were fine. Just the problem was that they were voluntary. She makes reference in her decision to actually a statement from me saying that the mitigation plan should not have allowed them to bid on this contract, that they had said in their plan. I'm trying to avoid the specific statements, but it's in the open record of the decision that their plan stated that they wouldn't bid on any contract where they would have access to source selection information. Clearly, this Category 2 contract would give them access to source selection information. But she said, quote, I don't have any problem with the mitigation efforts. She didn't have any problem. Other than that they're voluntary. Yes. And her concern was that Lockheed Martin would not necessarily, not that Lockheed Martin would violate it, but that it seemed to me that the government wouldn't understand if a violation existed. So that's what she meant by it's voluntary because even though the government's there to enforce it, we don't trust the government to enforce it? I would say that it would be a fair statement that Judge Braden was not comfortable with the contracting officer's ability to manage the contract. So given that focus, as you have surmised it to be, why does that justify a supplementation of the record as she permitted and her reliance on the two opinion? To go back to the timeline, the supplementation occurred months before she came to the decision that there was a violation and that she was not able to believe that the mitigation plan would be effective. But her decision seemed to be in reliance on, if not heavily influenced by, those declarations and not necessarily focused on whether the contracting officer's conduct was rational or in violation of FAR 9.5. I agree. She definitely believed the argument from the Major General Adams and Mr. Richardson was something that convinced her. I was just trying to point out that she supplemented the record and then much later made that determination that there was a violation of law. The reason it was appropriate to supplement the record in this instance is several. One, because it was the complexity of the issues. Two, these declarations were before the GAO below, and the Court of Federal Claims has said in at least two cases, the SDS case, and we cited to it in our brief. I'm going to not have it right in front of me. In any case, it's definitely an SDS international case,  with the information presented to the Government Accountability Office when you're having one protest there and then the same thing comes to the Court of Federal Claims because it was something that was before the GAO, and also it's in the nature of the argument. And that's where it gets to the issue of why it's appropriate to have this information be before the Court, because the Court is considering it not as, and we use the term supplementing the record, but that would also mean that our arguments in our briefs before the Court of Federal Claims are essentially supplementing the record. It's in the nature of argument. It's explaining the facts to the judge. So we're not adding something, like we're not attempting to say that General Adams and Mr. Richardson were involved somehow in the procurement decision and the contracting officer's decision was contrary to what advice they gave to the contracting office. We're saying that it's simply in the nature of similar to lawyer argument, that they've reviewed the materials and they have this opinion. Why is it relevant at all? To the same extent that what I say is relevant, Your Honor. It's a matter of... But they're not counsel before the Court? True. And they're offering an opinion on the ultimate question that the Court is called upon. They're essentially expert witnesses, Your Honor. And isn't the area of expert witnesses offering a legal opinion to the Court either necessary or particularly favored? I don't think that they were offering legal opinions. They're offering their opinion based on their experience at this agency and saying this is what we know and explaining. So they obviously were not offering legal opinions. They didn't talk anything about... They didn't talk about the law. They talked about this is the nature of purchase care versus non-purchase care and what the contracting officer is saying doesn't make sense because of the nature of the interplay between those two things. But how can that be in any way consistent with Florida Power in terms of the review of the administrative record? Florida Power says that we review based on the administrative record. And it is true that the administrative record is the basis for considering what a contracting officer did in these situations. But obviously there is precedent and the Court of Federal Claims has employed it that allows it to supplement in instances that are limited and restricted. And the Court here... In rare circumstances. And generally those rare circumstances relate to questions of the evidence or questions of the record or questions with respect to the integrity of that record that's going to be reviewed, not necessarily opinions of expert witnesses. I'll take a slight issue with you, Your Honor. Based on my experience with doing protests at the Court of Federal Claims, it is difficult to say categorically that X type things will always come in in supplementing the record and Y things will never come in. It's fair enough. But nonetheless, you're in a category here that's a little bit out of the mainstream at best. Well, I've had other declarations admitted before other judges. Maybe. So from my perspective, it's not that far out of the mainstream. So what should we take from, in terms of the question of whether she substituted her own judgment rather than deferring to the agency's determination, her discussions about the potential antitrust concerns raised by the bidding process that hadn't been the subject of your bid protest? Your Honor, because the final decision didn't rely on that, I don't think it's necessarily relevant. It's one of those things she brought up. It was something that she was concerned with, but I don't believe that she was substituting her judgment in that instance. It was a concern that the judge raised, but when push came to shove, she determined that there was a violation of law or regulation. Well, I guess maybe I'm not understanding the record below, as you do, but it seemed to me that at the conclusion, she did sort of encompass the anti-competitive effects. In talking about the mitigation plan, she said it has to be a subject to the court order and otherwise does not impose any anti-competitive effects on future competition. So it seemed to me that that was really part of her ruling. That aspect came up, and it sort of came up twice. One, in her concerns about having the Federal Trade Commission weigh in in some fashion, but I think in particular what you're pointing to there, Your Honor, is she was worried that because under the mitigation plan, the Lockheed Martin employees had to sign a nondisclosure agreement. As a practical matter, those Lockheed Martin employees, when Lockheed Martin took over the contract from Axiom, were Axiom's former employees. The nature of these contracts are that the employees essentially follow the contract and not necessarily the employer. So my understanding of what the judge was getting at at that point was that she was just concerned that if there was a re-procurement, that Axiom was not going to have a detriment because of these nondisclosure agreements, that they couldn't allege that they were going to hire their former employees who were then Lockheed Martin employees. So are mitigation plans supposed to be evaluated based on whether or not they have any anti-competitive effects on future competition? I don't think so, Your Honor. It has to be analyzed based on the requirements of FAR, that they avoid any potential conflicts of interest. I believe, once again speaking for Judge Braden, that she was just concerned about the practical effect of a new procurement in trying to address her concerns. Just to get back to Judge Arden's question about Judge Braden substituting her judgment for the contracting officer, that would be a valid concern if what Judge Braden was addressing was the arbitrary and capricious standard, that the contracting officer had acted unreasonably. But we go to the second problem, as Ms. Madsen was talking about, that what we're talking about here is that she was addressing the contracting officer's actions as a violation of law or regulation, so that in that instance you don't necessarily peer into whether the agency's action was reasonable or not. If it's a violation of law or regulation, one presumes it's per se unreasonable, then you don't necessarily have to get to that point. All right. Thank you very much. Your time has expired. Oh, I thought I had two minutes left. No. Oh, I'm going beyond that. I'm sorry. You have a gratuitous two and a half minutes. I apologize. Thank you, Your Honor. All right. Mr. Canales? Your Honor, I'd like to correct the record. First of all, there was a statement by counsel that the judge relied upon three factors articulated in Esch counterfactual. You will find nowhere in any written opinion, any citation to any standard in Esch, no demonstration that the record was lacking, no articulation that the record was particularly complex, and in fact, and this is contained at pages 2096 through 2108 of the appendix, you'll see a colloquy between myself and the judge where I attempted to walk the court through the record and show the court that there existed a rational basis and the court didn't want to hear it. The court simply said, I don't know whether or not it's adequate or not. But the only standard articulated by the court for supplementing the record is found on page 2034. But if we on review were to conclude that some of those criteria were met, agreeing with your opposing counsel, then we could affirm her supplementation of the record, could we not? I mean, even though she might not have articulated the rationale for certain exceptions, if we concluded that those exceptions are met, then we could affirm her on that point. Perhaps, Your Honor, but I don't see how that decision, the supplementation of declarations that were created outside, that were not considered by the contracting officer, which were created solely for the purpose of litigation by individuals who acknowledge that they did not. I appreciate it. Can I just ask you one quick question that's a little off, but just for my own edification. What's the relevance of the GAO decision in the context of this appeal? I mean, is it relevant to our review of the contracting officer's decision? This court in the past has said that it's not controlling, but it certainly, because the GAO does possess a certain quantum of expertise with respect to procurement matters, the court can refer to that and has often used it as helpful. And is the entire record then before the GAO? Does that become part of the administrative record before us? No, Your Honor. There's a statute which governs what components of the GAO proceedings, 31 U.S.C. 3354, I believe. And that indicates that the only matters to be included as part of the administrative record are the decision of the GAO and a couple of ancillary matters, but not any declarations or evidence submitted in a particular GAO hearing. But I want to make clear that the only reason that the court stated in any written opinion or any statement that it needed to supplement the record, that it was in its practice, and I quote, to let everybody put in whatever they wanted. That is reversible error. Now, with respect to the interpretation of the FAR that I heard from opposing counsel, I heard a lot about what opposing counsel's opinions were and I heard a lot about what opposing counsel's hired consultants believed that the OCI, the Organizational Conflicts of Interest Law, should be. I heard no reference to the FAR. FAR 9.504 specifically states that not every conflict, not every organizational conflict, creates a situation where a contract award must be precluded. It talks about significant conflicts. 9.504A2 talks about mitigating conflicts, not extinguishing them. So even under the scenario wherein Lockheed's employees working on a Category 2 contract would have access to Category 3 information, the contracting officer determined that that was not extensive and therefore the FAR expressly contemplates that this sort of conflict of interest is adequately mitigated or could be adequately mitigated. And I also want to make clear that the court did not find in any absence of evidence, as is required by an APA review, the court simply disagreed with the contracting officer's assessment that the existing mitigation plan adequately mitigated the perceived conflict. This is contained on page 28 and 29. But I thought ultimately she concluded the mitigation plan was OK, it's simply that it wasn't, she didn't like the way it was being enforced. Your Honor, I acknowledge that the court's reasoning ambulates to some degree, but in page 28 and 29 of the Joint Appendix, you'll see her reasoning in her first opinion, and there she says that the mitigation plan, relying upon the statements of Mr. Richards and Ms. Adams, does not adequately mitigate. Then later on she says, and it's inconsistent, yes, Your Honor, but she does state both bases as her reason for overturning the contract award. She says that, well, I believe that the contracting officer would not basically enforce the contract. So she relied upon both reasons, and both reasons basically were substituting her judgment for the judgment of the contracting officer. It's not simply a matter of what a court should do in a traditional APA review, where the court decided, oh, there's an absence of evidence, or there's an absence of reasoning here. No, the court said, I don't agree with the contracting officer, I agree with Mr. Adams, or Ms. Adams and Mr. Richards, and therefore I'm going to, because I don't believe this mitigation plan will adequately mitigate the conflict, either because the Army will not enforce it, or because it's inadequate, therefore I'm going to overturn the contract award. And that's the basis, and that's contained under the appendix at page 41 through 43, bleeding over into 44. Okay, Mr. Kanellis, thank you very much. Your time has expired. I thank the counsel for both sides. The case is submitted.